382 S.E.2d 519

**STATE of West Virginia**

**v.**

**Dewaine WOODSON.**

**No. 18321.**

Supreme Court of Appeals
of West Virginia.

June 8, 1989.

---

James T. Kratovil, Kratovil & Kratovil, Weston, for Dewaine Woodson.

Charles G. Brown, Atty. Gen., J. Bradley Russell, Sr. Asst. Atty. Gen., Kevin Thompson, Asst. Atty. Gen., Charleston, for State of W.Va.

Miller, Justice:

The defendant, Dewaine Woodson, appeals a verdict by a jury in the Circuit Court of Lewis County convicting him of unlawful assault under W.Va.Code, 61–2–9. The defendant on appeal challenges the trial court's ruling that an oral statement he made after he invoked his right to remain silent was admissible. We agree with the defendant's position and find reversible error. The defendant also assigns as error other rulings made by the trial judge at the suppression hearing, which rulings we find to be correct. The State makes a cross-assignment of error regarding the suppression of an oral statement made by the defendant, which we do not consider.

I.

During the early morning hours of June 27, 1986, Officers Donald Rohrbough and Timothy Greiner of the Weston City Police Department responded to a citizen's call and found the beaten body of Steven Simons lying in hedges near Route 119 in Weston. The police were told by the neighbors that at approximately 3:00 a.m., a light colored van pulled up and parked outside the home of Lucille Malone. Two individuals got out of the van and began fighting. Shortly thereafter, one of them drove off in the van toward downtown Weston.

The police located the van and the defendant at 375 John Street in Weston. Upon knocking on the front door of the house, the officers saw the defendant come out of the side door. They obtained the defendant's written consent to search his van and, while the officers were proceeding with the search, the defendant blurted out

that he had "kicked the fagot's ass." The officers gave the defendant his *Miranda* rights.[1] The defendant was given a written *Miranda* form, and he indicated on that form that he did not want to speak with the police officers.

The defendant was taken by the officers to the Lewis County jail where the police had radioed for a magistrate to meet them. While they were waiting for the magistrate to arrive, Officer Rohrbough asked the defendant if he wanted to make a statement. The defendant said that he did not wish to make a written statement because he was unable to write, but that he would talk to Officer Rohrbough. He then told the officer about the altercation.

The defendant appeared before a magistrate and indicated that he wished to have counsel appointed to represent him. Thereafter, the police seized the clothing worn by the defendant at the time of his arrest.

At a suppression hearing conducted on April 7, 1987, the trial judge ruled that the oral statements made by the defendant at John Street should be suppressed. The trial judge further ruled, however, that neither the oral statements made by the defendant at the Lewis County jail nor the clothing worn by the defendant at the time of his arrest would be suppressed.

II.

The defendant first contends that the trial judge erred by allowing the oral statements he made at the Lewis County jail to be admitted into evidence. The defendant asserts that he had invoked his right to silence and that the police officers did not honor that right. The State, however, asserts that the defendant voluntarily made the statement at the jail and that the further inquiry by the police officers was not an attempt to undermine the intent of the defendant to remain silent.

The United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), recognized the procedure which must be followed once an

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

individual has been given the warnings of the right to remain silent and the right to counsel. The Court clearly stated:

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." 384 U.S. at 474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723.

The Supreme Court further observed in *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975), that the admissibility of statements made after an individual has invoked his right to remain silent "depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" The Court stated that "to permit the continuance of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." 423 U.S. at 102, 96 S.Ct. at 326, 46 L.Ed.2d at 320.

Consistent with these Supreme Court decisions, we held in Syllabus Point 3 of *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980):

"Once a person under interrogation has exercised the right to remain silent guaranteed by *W.Va. Const.,* art. III § 5, and *U.S. Const.* amend. V, the police must scrupulously honor that privilege. The failure to do so renders subsequent statements inadmissible at trial."

**2.** The defendant also asserts that his Sixth Amendment right to counsel was violated when he asked for counsel in his initial appearance before the magistrate. The record is not completely developed on this issue, and, in view of our Fifth Amendment ruling, we decline to address it. *See Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), and Syllabus Point 1, in part, of *State v. Barrow,* 178 W.Va. 406, 359 S.E.2d 844 (1987), which states:

"If the police initiate interrogation after a defendant's assertion, at an arraignment or

*See also* Syllabus Point 5, *State v. Farley,* 167 W.Va. 620, 280 S.E.2d 234 (1981).

The evidence from the suppression hearing shows that after the defendant was given his *Miranda* warnings, he indicated on a written *Miranda* form that he did not want to speak with police. Furthermore, Officer Greiner testified that it was his impression that the defendant did not want to talk to the police and that he wished to speak with an attorney.[2] Yet, after arriving with the defendant at the Lewis County jail, Officer Rohrbough once again asked the defendant whether he wished to make a statement. Clearly, the initiation of this custodial interrogation after the defendant had invoked his privilege to remain silent rendered the defendant's subsequent statements inadmissible at trial.

### III.

■ The defendant next assigns as error the trial court's refusal to allow at the trial evidence of the victim's prior convictions. The defendant contends that the victim's two prior convictions in West Virginia for burglary indicate the violent nature of the victim. The State argues, however, that the two burglary convictions do not demonstrate a violent nature, and, therefore, the admission of those convictions would not have demonstrated any pertinent character traits of the victim pursuant to Rule 404(a)(2) of the West Virginia Rules of Evidence.

■ Rule 404(a)(2) essentially codifies the common law rules on the admission of character evidence of the victim of a crime. *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988); *State v. Welker,* 178 W.Va. 47, 357 S.E.2d 240 (1987). In particular, under our traditional rule,[3] a defen-

similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid because it was taken in violation of the defendant's Sixth Amendment right to counsel."

**3.** Rule 404 provides, in pertinent part:

"(a) *Character Evidence Generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

dant in a homicide, malicious wounding, or assault case who relies on self-defense or provocation may introduce evidence concerning the violent or turbulent character of the victim, including prior threats or attacks on the defendant. Moreover, if the defendant has knowledge of specific acts of violence by the victim against third parties, he may give evidence thereof, as indicated in Syllabus Point 2 of *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983):

> " ' "In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof." Syllabus Point 1, *State v. Hardin*, 91 W.Va. 149, 112 S.E. 401 (1922).' Syllabus Point 3, *State v. Gwinn*, [169] W.Va. [169 W.Va. 456], 288 S.E.2d 533 (1982)."

*See also State v. McKinney*, 88 W.Va. 400, 106 S.E. 894 (1921) (malicious wounding); Annot., 1 A.L.R.3d 571 (1965).

It should be noted that in our cases prior to the adoption of Rule 404(a), we did not limit the defendant's right to show the violent character of the victim to cases where self-defense was asserted. In the text of *Louk*, we quoted Syllabus Point 3 of *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982), and inserted the word "provocation" after the term "self-defense," 171 W.Va. at

639, 301 S.E.2d at 596, but failed to carry this amendment into *Louk*'s Syllabus Point 2.

We discussed the term "provocation" at some length in *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978), and while it does not form a complete defense as does self-defense, it nevertheless does affect the degree of exposure to a homicide conviction, as we summarized in *Kirtley:* "Consequently, where provocation is shown to exist as a matter of law, a murder instruction or conviction is not warranted." 162 W.Va. at 254, 252 S.E.2d at 377. For this reason, the victim's violent character has relevance to a provocation issue.

The text of our Rule 404(a)(2), as well as its federal counterpart, does not use the term "self-defense," but refers to the concept of the victim as "the first aggressor." The notes of the Advisory Committee on the Federal Rules make it plain that this rule covers several situations, i.e., "evidence of a violent disposition to prove that the person was the aggressor in an affray" or "an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of self-defense to a charge of homicide." This is essentially the same as our preexisting evidentiary rules.

Moreover, our law contained in Syllabus Point 2 of *Louk* encompasses the rule set out in Rule 405(b), which enables "proof ... of specific instances of conduct" where "a trait of character of a person is an essential element of a charge, claim, or defense." [4] This is on the theory that an essential element of a claim of self-defense or provocation is the defendant's knowledge of the aggressive and violent character of the victim. This appears to be the general rule elsewhere. *See, e.g., Byrd v.*

"(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecutor to rebut the same;

"(2) Character of Victim of a Crime Other than a Sexual Conduct Crime.—Evidence of a pertinent trait of character of the victim of the crime, other than a crime consisting of sexual misconduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of

the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]"

**4.** Rule 405(b), W.Va.R.E., states in its entirety: *"Specific Instances of Conduct.*—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

*State,* 626 P.2d 1057 (Alaska 1980); *State v. Zamora,* 140 Ariz. 338, 681 P.2d 921 (1984); *Smith v. State,* 273 Ark. 47, 616 S.W.2d 14 (1981); *People v. Wright,* 39 Cal.3d 576, 217 Cal.Rptr. 212, 703 P.2d 1106 (1985); *State v. Miranda,* 176 Conn. 107, 405 A.2d 622 (1978); *State v. Basque,* 66 Haw. 510, 666 P.2d 599 (1983); *People v. Fischer,* 100 Ill.App.3d 195, 55 Ill.Dec. 640, 426 N.E.2d 965 (1981); *Commonwealth v. Fontes,* 396 Mass. 733, 488 N.E.2d 760 (1986); *State v. Ewing,* 97 N.M. 235, 638 P.2d 1080 (1982); *State v. Irby,* 368 N.W.2d 19 (Minn.App.1985); *State v. Johnson,* 270 N.C. 215, 154 S.E.2d 48 (1967); *McMorris v. State,* 58 Wis.2d 144, 205 N.W.2d 559 (1973); *see also* Annot., 1 A.L.R.3d 571 (1905); Annot., 56 A.L.R.4th 402, 445 (1987); *see generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* 326 (2d ed. 1986); 1 J. Wigmore, *Evidence* §§ 62 & 63 (3d ed. 1940); *McCormick on Evidence* § 193 (3d ed. 1984); 2 J. Weinstein, *Weinstein's Evidence* 404–48 (1988).

▇ We, therefore, conclude that under Rule 405(b), W.Va.R.E., a defendant in a criminal case who relies on self-defense or provocation may introduce specific acts of violence or threats made against him by the victim, and if the defendant has knowledge of specific acts of violence against third parties by the victim, the defendant may offer such evidence.[5]

In this case, evidence of the victim's two prior convictions on burglary charges was not relevant to establish his alleged violent nature. The elements of that crime do not involve violence to the person. Instead, they consist of a nighttime entry into a dwelling house or daytime breaking and entering of it with intent to commit a larce-

**5.** We expressly overrule any suggestion in note 4 of *State v. Hager,* 176 W.Va. 313, 342 S.E.2d 281 (1986), that Rule 405(b), W.Va.R.E., would permit the defendant to introduce specific acts of violence by the victim against third parties even though he has no knowledge of them at the time he claimed to have acted in self-defense. We also recognize that our analysis of Rule 405(b), W.Va.R.E., differs from Professor Cleckley's. *See* F. Cleckley, *supra* at 44 (1988 Supp.).

**6.** Syllabus Point 3 of *Stone* states:

ny or other felony. W.Va.Code, 61–3–11; *State v. Louk, supra.* There was no evidence of a violent felony against a person which had been committed during the course of the burglary. Accordingly, the trial court properly excluded this evidence.

## IV.

▇ The defendant also contends that the sweat pants he was wearing at the time of his arrest should not have been admitted into evidence because they were seized pursuant to an invalid arrest. The police officers seized the defendant's sweat pants in the Lewis County Jail after his arraignment before a magistrate. Officer Rohrbough testified at the suppression hearing that he seized the clothing worn by the defendant because there appeared to be blood on the defendant's pants, shirt, and shoes.

▇ The State seeks to justify the seizure of the defendant's clothing under the "plain view" doctrine contained in Syllabus Point 3 of *State v. Stone,* 165 W.Va. 266, 268 S.E.2d 50 (1980),[6] which arises from *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 120 (1971). In *State v. Moore,* 165 W.Va. 837, 852–53, 272 S.E.2d 804, 814 (1980), we discussed this doctrine and attempted to show that it is ordinarily limited to situations where law enforcement officials executing a search warrant inadvertently discover contraband or evidence of a crime in plain view.

There is no question that the label "plain view" is confusing, as it is also applied to a situation where the police officer is present where he has a lawful right to be and sees in plain view an object that constitutes contraband or evidence of a crime. If this

"It is not a search for the police to discover evidence in plain sight and the warrantless seizure of such evidence is constitutionally permissible provided 1) the police observe the evidence in plain sight without the benefit of a search [without invading one's reasonable expectation of privacy]; 2) the police have a legal right to be where they are when they make the plain sight observation; and, 3) the police have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime."

object is also in a public place, it may be seized without a warrant. This latter concept of "plain view" is discussed in 1 W. LaFave, *Search & Seizure* 322–23 (2d ed. 1987):

> "By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in *Coolidge*, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. . . .
>
> "It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion." (Footnote omitted).

In this case, the police observed blood stains on the defendant's shirt, pants, and shoes at his arraignment before the magistrate and subsequently had him remove his clothing at the jail. It is apparent that the initial observation was made in a location where the police had a right to be, i.e., at the magistrate's office. The blood stains were open and apparent. In view of their prior knowledge that the victim had been severely beaten during a fight a few hours earlier, the police obviously believed this to be evidence connected to the crime.

In a rather similar fact setting, the Supreme Judicial Court of Massachusetts in *Commonwealth v. Meehan*, 377 Mass. 552, 387 N.E.2d 527 (1979), concluded that no Fourth Amendment violation had occurred on a warrantless seizure of sneakers. There a suspect was at the police station when officers observed what appeared to be bloodstains on his shoes. The court stated: "This interpretation is in accord with decisions applying the plain view rule to the seizure without warrant of clothing or other material believed to be bloods-

tained and thus connected to a crime under investigation." 377 Mass. at 560, 387 N.E.2d at 532. (Citations omitted).

Furthermore, as the United States Supreme Court explained in *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), there was no search of the defendant's person, but only a seizure of certain articles of clothing—a much less intrusive step. In *Cupp*, the defendant appeared voluntarily at the police station in connection with an investigation into the strangulation murder of his wife. The police noticed a dark spot on his finger and believed that it might be dried blood. The police also knew that evidence of strangulation is often found under the nails of the assailant. He was asked to permit scraping from his fingernails. When he refused, the police took the samples, which contained traces of the victim's skin, blood cells, and fabric from her nightgown.

The Supreme Court found the initial detention to be justified because the police had probable cause to arrest even though the defendant was not formally arrested. It justified the search under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which had authorized a limited warrantless search of the person and the immediate area incident to a lawful arrest. This was in order to obtain any weapons the suspect may have and to secure any incriminating evidence before it can be destroyed.

However, the Court recognized in *Cupp* that since no actual arrest had been made, a "full *Chimel* search would [not] have been justified in this case." 412 U.S. at 296, 93 S.Ct. at 2004, 36 L.Ed.2d at 906. It found that the search was sufficiently limited to be justified. Moreover, *Cupp* recognized that there were exigent circumstances to obtain the evidence, as it might otherwise be destroyed, a point which has been emphasized in later cases. *E.g., United States v. Hall*, 739 F.2d 96 (2d Cir.1984); *United States v. Juarez*, 573 F.2d 267 (5th Cir.1978); *United States v. Rizzo*, 583 F.2d 907 (7th Cir.1978); *Franklin v. State*, 18 Md.App. 651, 308 A.2d 752 (1973); *State v. Schueler*, 488 A.2d 481 (Me.1985); *State v.*

*Badger*, 141 Vt. 430, 450 A.2d 336 (1982). *See generally* 2 W. LaFave, *Search & Seizure* § 5.4(b) (1987). Thus, we believe the seizure of the defendant's clothing was proper.

■ The State would have us end our inquiry at this point. However, in *Cupp* and the foregoing cases, it is clear that the initial detention or seizure of the person must be found to have been lawful in order to justify the subsequent seizure of his clothing. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). *See generally* 2 W. LaFave, *supra* at § 5.2.

We believe that there was probable cause for the defendant's arrest. It appears that after the police had investigated the scene where the victim was found, they obtained a description of a light colored, older model van from a resident who had seen two men emerge from the van and begin fighting. This witness also saw the van driving toward downtown Weston after the fight. One of the officers thought the defendant was the owner of the van. About one-half hour earlier, he and a fellow officer had seen the defendant, the victim, and a third party at a Sunoco filling station in Weston. They also observed a light colored, older model van at the station. Finally, Officer Rohrbough stated that he was personally acquainted with these three individuals.

We believe that all of these factors established sufficient probable cause to arrest and detain the defendant. We have defined probable cause in Syllabus Point 1 of *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971): "Probable cause to make an arrest without a warrant exists when the facts and the circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed or is being committed." [7] Consequently, there being a lawful arrest, the detention of the defendant and the seizure of his blood-stained clothing were proper.

### V.

■ The State asserts as a cross-assignment of error that the trial court should not have excluded the defendant's initial admission at John Street. The State contends that the defendant's initial admission while the officers were searching his van on John Street to the effect that he had "kicked the fagot's ass," was not brought on by police questioning. We are not cited any authority by the State which permits it to cross-assign error in a criminal appeal. [8]

We are mindful of our general law that limits the State's right to appeal in a criminal case, which we discussed at some length in *State v. Jones*, 178 W.Va. 627, 363 S.E.2d 513 (1987), where we concluded in Syllabus Point 2: "Our law is in accord with the general rule that the State has no right of appeal in a criminal case, except as

---

**7.** This definition is quite similar to that given in *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343, 349–50 (1979), as we pointed out in note 7 of *State v. Craft*, 165 W.Va. 741, 757, 272 S.E.2d 46, 55–56 (1980):

"This Court repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. See *Gerstein v. Pugh, supra*, 420 U.S. [103], at 111, 95 S.Ct., [854] at 861 [43 L.Ed.2d 54]; *Adams v. Williams, supra*, 407 U.S. [143], at 148, 92 S.Ct. [1921] at 1924 [32 L.Ed.2d 612]; *Beck v.*

*Ohio, supra*, 379 U.S. [89], at 91, 85 S.Ct. [223], at 225 [13 L.Ed.2d 142]; *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Brinegar v. United States, supra*, 338 U.S. [160], at 175–176, 69 S.Ct. [1302], at 1310–1311 [93 L.Ed. 1879]; *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)."

**8.** We do note that under Rule 10(f) of the Rules of Appellate Procedure for the West Virginia Supreme Court of Appeals, an appellee may make a cross-assignment of error. We spoke about this rule in a general way in *Payne v. Kinder*, 147 W.Va. 352, 127 S.E.2d 726 (1962), but that case involved a civil appeal.

may be conferred by the Constitution or a statute." [9]

We decline, in the absence of any specific statute, to accord a right on the part of the State to cross-assign error. It would appear that to do so would add a variety of additional errors that would have to be addressed when none of them would be dispositive of the appeal.[10]

## VI.

For the foregoing reasons, the judgment of the Circuit Court of Lewis County is reversed and the case is remanded for a new trial.

Reversed and remanded.

**9.** We also stated in *Jones* that "[s]tatutes giving the right of appeal to the State are also subject to scrutiny under constitutional double jeopardy principles." 178 W.Va. at 629, 363 S.E.2d at 514, *citing Ex Parte Bornee,* 76 W.Va. 360, 85 S.E. 529 (1915), and *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

**10.** Typical is the cross-assigned error here. It appears from the suppression hearing that the defendant was in custody at the time the offi-

cers indicated he was the main suspect and that he would not be permitted to leave the area of his van. He was asked several preliminary questions as to whether he had been with the victim and whether he had hit him. This produced the defendant's statement, "I kicked the fagot's ass." These questions were asked prior to any *Miranda* warnings. The circuit court was correct in its holding. *See* Syllabus Point 2, *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979).