438 S.E.2d 331

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ronzel RICHARDS, Defendant Below, Appellant.**

**No. 21564.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Nov. 23, 1993.

Frank W. Helvey, Jr., Appellate Public Defender, Charleston, for appellant.

Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal by Ronzel Richards from an order of the Circuit Court of Calhoun County sentencing him to two concurrent terms of from two to ten years in the State penitentiary for the malicious wounding of his brother and his nephew. On appeal, the defendant claims that the circuit court erred in allowing the prosecution to show that he had committed collateral crimes and that the court denied him a fair trial by refusing to permit him to adduce evidence on the bad reputation and habits of the victims. He also claims that the court committed a number of errors relating to the enhancement of his sentence for his use of a firearm in the commission of the crimes charged. After reviewing the questions presented, this Court agrees that the trial court committed reversible error. Accordingly, the defendant's conviction is reversed, and he is awarded a new trial.

The charges against the defendant grew out of a shooting incident which occurred on May 3, 1991. On that day, the defendant was plowing a garden on property owned by his parents. The garden was adjacent to a parcel of land owned by the defendant's nephew, Boyd Richards.

There had been an on-going dispute over where the boundary line ran between the defendant's parents' property and the Boyd Richards' property, and while the defendant was plowing his parents' garden on May 3, 1991, his nephew jumped up on his tractor and struck or "pecked" him on the arm and complained that he was plowing across the boundary line. According to the defendant, the nephew, Boyd Richards, dumped a beer on him and told him that he "was not plowing no more of this garden." The defendant replied that he was going to finish plowing even if he had to "go off this hill and get a shotgun."

After this incident, the defendant stopped the tractor and walked to his parents' house to get a shotgun. The defendant told his parents that he was "taking a shotgun on the hill ... I am not going to let them beat me halfway to death up there." His mother begged him to call the police. The defendant, nonetheless, loaded the shotgun and returned to the garden area. On the way, he fired a shot into the side of an outbuilding and advised Boyd Richards and Boyd's father, Charles Richards, who was in front of Boyd's trailer, to "leave me alone ... I plan to finish this garden ... You people are going to have to kill me to stop me."

As the defendant began to resume plowing, he observed a beer bottle rolling toward his tractor tire. He picked it up and tossed it into Boyd Richards' yard. According to the defendant, he also heard Charles Richards shout, "Hit him in the head." The defendant had a plastic plate in his head as the result of a previous injury, and according to his testimony, he was fearful that a blow to this plate might be fatal. He, therefore, turned toward Boyd Richards and lifted his shotgun. He testified that he observed Boyd with his arm drawn back. He then fired the shotgun in Boyd's direction. Both Boyd and Charles Richards were struck and injured by the shot.

The defendant was subsequently charged with, and tried by a jury on, two counts of malicious wounding.

During his opening statement at the defendant's trial, defense counsel stated that he would prove that the victims of the shooting, Boyd Richards and Charles Richards, were recognized as known drunks and troublemakers with violent tempers. He also stated that he would prove that the defendant's

reputation was that of "a peaceful ... and law abiding citizen[,] not the sort of person who would without provocation shoot someone, much less his brother and nephew." He portrayed the defendant as "the mainstay of his family" who had "been a stable husband and father."

At the close of the opening statement, the prosecutor approached the bench and argued that defense counsel, by his opening remarks, had put the defendant's reputation in issue. Without discussion, the trial court agreed, and prior to the commencement of the second day of trial, the court, in an *in camera* hearing, ruled that the State could bring the defendant's criminal record, if any, into evidence.

The defendant was the first witness to testify in his own defense, and during a recess following his direct testimony, defense counsel informed the court that he had learned that the defendant had twice been convicted of possession of stolen property, once in 1969 in Tennessee, and once in 1975 in Ohio and objected to, or moved that the court exclude, the introduction of these crimes. The court ruled that the evidence was admissible.

During cross-examination of the defendant, the prosecutor elicited evidence of the convictions, and later, during closing argument, the prosecutor told the jury that defense counsel had failed to inform the jury during his opening statement that the defendant had been in prison "at least, two times and had ..., at least, two felony convictions." The prosecutor also said during rebuttal:

Did they tell you in opening statement that he had a prison record, that he had committed felonies, numerous felonies, and he'd been in prison in two other states or did I have to bring it out on cross examination of the Defendant.

The defendant's first contention on appeal is that the trial court erred in allowing the State to introduce the collateral crime evidence. It is apparent from the record, as well as from the arguments of the parties on appeal, that this contention involves the question of whether defense counsel interjected the defendant's character into evidence when, during his opening statement,

he indicated that the defendant was a peaceful and law-abiding citizen. The State argues that defense counsel's remarks laid the proper foundation for the admission of collateral crime evidence.

The West Virginia Rules of Evidence allow the introduction of collateral crime evidence to rebut evidence of a particular trait of character offered by the accused. Specifically, Rule 404(a) provides, in relevant part:

Character Evidence Generally.—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of the Accused—Evidence of a pertinent trait of his character offered by an accused, or by the prosecutor to rebut the same; ...

West Virginia's Rule 404 is modelled on the corresponding Rule of Federal Evidence, and this Court has rather consistently followed decisions under the Federal Rule in interpreting and applying the West Virginia rule.

Regarding Federal Rule 404, J.B. Weinstein, *Weinstein's Evidence,* § 494[05] (1992), states:

Rule 404 restates the common law rule which bars the prosecution from the circumstantial use of bad character in the first instance, but allows the accused to introduce evidence of good character. The inconsistency seeks to protect a defendant from being convicted merely of "being bad." The accused has an absolute right to introduce character evidence, although the trial court, in its discretion, may limit the scope of the proof, as by limiting the number of witnesses; or by controlling the order of proof.

\* \* \* \* \* \*

The prosecution may come forward with evidence rebutting good character only when the accused has called character witnesses to testify to his character.

In line with this proposition, if the defendant had called a witness or witnesses who testified that he was a peaceful and law-abiding citizen, the prosecution could proper-

ly have introduced evidence to show that the defendant had previously been convicted of crimes. Such evidence would, in effect, have rebutted the testimony of the witnesses that the defendant was a law-abiding citizen.

 However, in the present case, the defendant did not introduce evidence that the defendant was a law-abiding citizen. Rather, defense counsel merely stated during his opening statement that the defendant was a law-abiding citizen. Thus, the real question presented to this Court on appeal is whether a remark during an opening statement, rather than the introduction of actual evidence, sets the stage for the introduction of rebuttal evidence involving collateral crimes.

So far as this Court can determine, no West Virginia case has ever spoken to this issue, and it appears that very few other jurisdictions have addressed it. However, a few Federal courts have concluded that a remark made during an opening statement does not constitute evidence and does not provide the foundation for the admission of rebuttal evidence of collateral crimes.

In a seemingly-lead case on the question, *United States v. Tomaiolo*, 249 F.2d 683 (2d Cir.1957), the Second Circuit Court of Appeals indicated that the rule relating to the introduction of rebuttal evidence involved only the rebuttal of actual evidence, that is, sworn testimony. The court reasoned:

> [I]t is clear that the opening statement of counsel for the defendant could not have put the defendant's character in issue. Such a statement has no evidentiary value, and therefore does not call for or justify cross-examination or rebuttal evidence.

*Supra* at 689. The court further indicated that argument could effectively be explained or neutralized by counter-argument or by instruction of the trial court. Actual, sworn evidence was not necessary. The court stated:

> An instruction from the Court or argument of counsel is sufficient correction, not the introduction of otherwise inadmissible evidence.

*Supra* at 689.

In another case, *United States v. McLister*, 608 F.2d 785 (9th Cir.1979), a cocaine case, defense counsel, in his opening statement, told the jury that the defendant, McLister, was engaged in the antique business; that he had purchased property in Colorado and intended to go into the hydroponics business, and that he came from "what may be called a relatively privileged background" with no need to get into any illegal business. Defendant McLister testified regarding his property interests and his intention of going into the hydroponics business. The prosecution argued that it had the right under Rule 404(b) of the Federal Rules of Evidence to impeach McLister's credibility. The appeals court found:

> We cannot find that ... counsel's opening statement ... placed his character in issue under Rule 404(a) or under the rules set forth in *Michelson v. United States, supra* [335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948)].

In another case, *United States v. Green*, 648 F.2d 587, 595 (9th Cir.1981), the court said, "[a]n opening statement, however, having no evidentiary value, cannot operate to place an issue in controversy."

In this Court's view, the rather clear language of the West Virginia Rules of Evidence contemplates that rebuttal evidence be introduced only to rebut actual evidence previously introduced, and the simple mention of character issues during an opening statement does not lay a proper foundation for, or open the door for, the introduction of otherwise inadmissible character evidence on rebuttal.

 The Court notes that the State argues that the defense, in addition to raising the issue of the defendant's character during his opening statement, introduced evidence during its case that the defendant had been "a good boy," and that the defendant's niece testified:

> All of my life with Ronzel [the defendant] and all the other kids, Ronzel's always been the only one that's really fair and honest and the, you know, least problem of all the kids ... And now he's trying to live a good Christian life and raise his children and stay out of trouble.

Although these remarks were of the sort which normally sets the stage for the introduction of character evidence against a defendant, in the present case they were made only after the State had introduced evidence of the collateral crimes committed by the defendant. In effect, the evidence of collateral crimes was introduced before the defendant introduced evidence relating to his character, and under these circumstances, the Court cannot conclude that they laid the foundation for the introduction of collateral-crimes evidence.

■ The defendant's second contention is that the trial court denied him a fair trial by refusing to permit him to call witnesses to testify as to opinion, reputation, and habit evidence relating to the victims' pertinent traits of character.

At the start of the defendant's trial, it was clear that the defendant intended to raise the issue of self-defense and that he anticipated introducing evidence of the violent and turbulent character of the shooting victims.

To form a foundation for his self-defense claim, the defendant introduced evidence showing that a plastic plate had been placed in his skull after he had been injured in an accident in 1985. Because of the plate, he was on constant guard to avoid being hit in the head. He testified that immediately prior to the shooting, he believed that his brother and nephew had thrown beer bottles into his path and that he heard his brother, Charles, shout, "Hit him in the head ..." He further testified that he believed that the victims were going to hit him in the head, and, "As I turned around, I seen Bo with his arm drawed back like he was getting ready to throw something." He explained that he fired the gun to stop them.

■ This Court has recognized in syllabus point 2 of *State v. Woodson,* 181 W.Va. 325, 382 S.E.2d 519 (1989), that:

Rule 404(a)(2) of the West Virginia Rules of Evidence essentially codifies the common law rules on the admission of character evidence of the victim of a crime. In particular, under our traditional rule, a defendant in a homicide, malicious wounding, or assault case who relies on self-defense or provocation may introduce evidence concerning the violent or turbulent character of the victim, including prior threats or attacks on the defendant.

This is also reflected in syllabus point 2 of *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983):

" 'In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof.' Syllabus Point 1, *State v. Hardin,* 91 W.Va. 149, 112 S.E. 401 (1922)." Syllabus Point 3, *State v. Gwinn,* [169] W.Va. [456], 288 S.E.2d 533 (1982).

*See also, State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990) and *Deitz v. Legursky,* 188 W.Va. 526, 425 S.E.2d 202 (1992).

At bench conference during the direct examination of the defendant, the court ruled that the defendant could testify as to the turbulent and violent character of the victims, but no other defense witnesses would be permitted to do so. The court did, however, agree that the defense counsel could vouch the record with the potential testimony of other possible witnesses relating to the matter.

A proffer was made to vouch the record. That proffer indicated that four members of the defendant's family would have testified that Charles Richards and Boyd Richards were violent and turbulent individuals. Additionally, it indicated that another witness, Billy Parsons, would have testified that the victims, Charles and Boyd Richards, were violent and turbulent and that he had overheard a conversation, at an unknown time before the shooting incident, between Charles Richards and Boyd Richards during

which Charles Richards and Boyd Richards talked about "getting" the defendant.

On appeal, the defendant claims that the trial court improperly prejudiced his case by refusing to allow him to introduce the testimony of these witnesses.

As previously indicated, in syllabus point 2 of *State v. Woodson, supra,* the Court has recognized that where a defendant in a malicious wounding or assault case relies on self-defense, he may properly introduce evidence of the violent or turbulent character of the victim and also evidence of prior threats or attacks of the victim against the defendant.

It rather clearly appears to this Court that the defendant, who was charged with malicious wounding, did rely on self-defense since he rather explicitly indicated that he was afraid of being struck in the head immediately prior to the shooting and since he testified that he shot the gun to stop the potential attackers. Given this, and given the rule set forth in *Woodson,* the Court believe that the trial court erred in excluding the evidence of the character of the victims and the evidence that a statement had been made to the effect that they had talked about "getting" the defendant.

The defendant's remaining assignments of error relate to actions taken by the trial court involving the enhancement of his sentence for use of a firearm. The court's actions were apparently taken because of the language of W.Va.Code § 62–12–2(b), which provides:

> The provisions of subsection (a) of this section to the contrary notwithstanding, any person who commits or attempts to commit a felony with the use, presentment or brandishing of a firearm shall be ineligible for probation.

Apparently because of this statutory language, the trial court instructed the jury to determine whether the defendant had used a firearm if it determined that he had committed the crimes charged. Specifically, the court told the jury:

> If the jury and each member of the jury finds from all the evidence beyond a reasonable doubt that the Defendant used a firearm in the commission of such offense,

you should find that the Defendant did use a firearm in the commission of the offense.

The court also told the jury:

> If the jury and each member of the jury finds from all the evidence beyond a reasonable doubt that the Defendant did not use a firearm in the commission of malicious assault, you should find the Defendant did not use a firearm in the commission of the offense.

The trial court additionally submitted a special interrogatory to the jury on the use of a firearm, and after the jury returned a verdict against the defendant, the court enhanced the defendant's sentence because the jury had responded to the interrogatory in the affirmative.

Although W.Va.Code § 62–12–2(b) authorizes enhancement of a sentence for use of a firearm, other portions of W.Va.Code § 62–12–2 specify what must be done before the enhancement may occur. Specifically, W.Va. Code § 62–12–2(c)(2)(C) requires that "the state shall give notice in writing of its intent to seek such finding ... which notice shall state with particularity the grounds upon which such finding shall be sought as fully as ... required to be stated in an indictment ... unless grounds therefor are alleged in the indictment ..."

■ In *State v. Johnson,* 187 W.Va. 360, 419 S.E.2d 300 (1992), which was decided a very short time before the defendant's trial, this Court discussed the enhancement of sentences under W.Va.Code § 62–12–2 and the notice requirements of W.Va.Code § 62–12–2(c)(2)(C). In syllabus point 2 of the *Johnson* case, the Court specified how notice under the statute could be given:

> Under W.Va.Code, 62–12–2 (1986), the State has two options by which it may notify the defendant of its intent to seek an enhanced penalty. Under W.Va.Code, 62–12–2(c)(1), it may set out the charge in the indictment, or, under W.Va.Code, 62–12–2(c)(2)(C), it may elect to give notice of the enhancement by a writing. In this latter event, the grounds must be set out as fully as such grounds are otherwise required to be stated in an indictment.

Rather importantly the Court also indicated in the *Johnson* case that:

> The procedural language of our statutes is mandatory. Thus, failure by the State to notify the defendant to seek sentence enhancement will make the statutes inapplicable.

*State v. Johnson, supra,* at 363, 419 S.E.2d at 303. The clear meaning of this is that the State may not seek a W.Va.Code § 62–12–2 enhancement of a defendant's sentence for use of a firearm in the commission of the crime charged unless it has previously given the defendant notice of the intention to enhance in the manner outlined in syllabus point 2 of *State v. Johnson,* 187 W.Va. 360, 419 S.E.2d 300 (1992).

In the present case, it appears that the State failed to notify the defendant, in the manner set forth in *State v. Johnson,* that a sentence enhancement would be sought. In view of this, and in view of the requirement of *State v. Johnson,* this Court concludes, and the State admits, that the trial court erred in raising the enhancement issue and in enhancing the defendant's sentence for the use of a firearm.

For the reasons discussed above this Court concludes that the trial court committed reversible error by allowing the State to introduce evidence of collateral crimes committed by the defendant, by refusing to admit evidence of the victims' character and prior threatening remarks, and by enhancing the defendant's sentence for the use of a firearm. Under the circumstances, the Court has concluded that the defendant's conviction should be reversed and that his case should be remanded for a new trial.

Reversed and remanded.