512 S.E.2d 865

**Peggy BAILEY, Shelby Scott, Donna Yarborough and Carla Martin, Appellants,**

v.

**William P. McDONALD, D.C., Appellee.**

**No. 25050.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 11, 1998.

Sandra A. Willis, Esq., Willis & Chattin, Charleston, West Virginia, Attorney for the Appellants.

Charles F. Johns, Esq., Amy M. Smith, Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for the Appellee.

PER CURIAM:

The appellants, Peggy Bailey, Shelby Scott, Donna Yarborough, and Carla Martin, appeal the July 16, 1997 order of the Circuit Court of Kanawha County, West Virginia, which denied their motion for a new trial. Upon conclusion of the jury trial, which was held on January 6–10, 1997, the jury ruled in favor of the appellee, Dr. William P. McDonald. The appellants contend the circuit court committed numerous errors at trial, most importantly, the court abused its discretion by excluding rebuttal evidence of prior collateral sexual misconduct involving former patients of Dr. McDonald. We believe the trial court abused its discretion.

### FACTUAL BACKGROUND

#### A. Peggy Bailey

Peggy Bailey strained her back when she fell down a flight of stairs at work. She applied for worker's compensation and was sent to Dr. McDonald's office for an independent medical examination by the Workers' Compensation Commission. When she arrived at Dr. McDonald's office, she was greeted by staff and asked to fill out a couple of forms. Prior to examination, she was asked to remove all her clothing, including

her underpants, which she refused to do. The staff member gave her a hospital gown to wear during the examination. No female attendant was present in the examination room and the door was closed.

Ms. Bailey testified at trial that Dr. McDonald conducted some preliminary tests, then requested that she pull her underpants down. When she asked why, she was allegedly informed that "Worker's Compensation wanted everything done right." She complied with the request. Dr. McDonald stood behind her, allegedly prodding her buttocks and breathing heavily. She testified that she became curious as to what he was doing and attempted to turn around to ascertain his actions. Dr. McDonald allegedly grasped her shoulders and kept her from turning around, whereupon he then requested that she lie down on the chiropractic examination table. After she did so, Ms. Bailey testified that Dr. McDonald began to prod and caress her buttocks.

### B. Donna Yarborough

The story Donna Yarborough testified to at trial was similar. She also was referred to Dr. McDonald for an independent medical evaluation by the Workers' Compensation Commission. Like Ms. Bailey, she stated that she was told to completely disrobe. During the course of her examination, she claimed that Dr. McDonald fondled her breasts and complimented her on their appearance. Several months later she was sent back to Dr. McDonald for another independent medical evaluation. She claimed that on this occasion Dr. McDonald had her position herself in such a way that he could clearly view her genitalia. Furthermore, she claimed that during the course of the second visit, she observed the doctor massaging the crotch area of his pants.

### C. Shelby Scott

Shelby Scott was also sent to Dr. McDonald's office for an independent medical examination by the Workers' Compensation Commission. She claimed that on various visits to his office, Dr. McDonald touched her breasts and buttocks.

### D. Carla Martin

Carla Martin voluntarily sought treatment from Dr. McDonald. She testified that during her second visit to the office, she noticed the doctor's pants were unzipped while the two of them were in the examination room. Moreover, she claimed that he caressed her breasts and buttocks throughout this examination and that she heard him breathing heavily, but could not observe his actions as he was standing behind her.

At trial, Dr. McDonald testified that he had touched the appellants, but only in the course of performing legitimate chiropractic evaluations, which require a great deal of touching. He denied touching any of the appellants in an inappropriate manner. He further denied that he had acted inappropriately toward or in the presence of any of the appellants.

On March 24, 1995, the appellants, with the exception of Carla Martin, filed suit against Dr. McDonald, alleging the doctor "sexually humiliated, abused, harassed, molested and battered" them, thereby "deviat[ing] from the appropriate standard of care for chiropractors conducting such examinations." Each of the appellants sought compensatory and punitive damages for sexual abuse and battery. Carla Martin later filed suit against Dr. McDonald, alleging the same grounds and seeking the same relief. The trial court entered an agreed order which consolidated these cases for trial.

A trial was held on January 6–10, 1997, at the conclusion of which the jury returned a verdict in favor of Dr. McDonald against all four appellants. The appellants filed a motion for a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. The court entered its judgment order, following which Dr. McDonald filed his response to the motion for a new trial. The court held a hearing on the motion. After considering the briefs and arguments of counsel, the trial court entered an order on July 16, 1997, denying appellants' motion. It is from this order the appellants appeal.

### STANDARD OF REVIEW

■ "A trial judge's decision to award a new trial is not subject to appellate review

unless the trial judge abuses his or her discretion ." Syllabus Point 3, in part, *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994). The same standard applies when a trial judge makes a decision to not award a new trial. Under this overarching standard, this Court has more specifically stated that "ordinarily a circuit court's evidentiary rulings are reviewed under an abuse of discretion standard." *Gentry v. Mangum*, 195 W.Va. 512, 518, 466 S.E.2d 171, 177 (1995).

## DISCUSSION

■ Even though the appellants assert several assignments of error, the key issue in this appeal is whether the trial court erred in refusing to allow the appellants to introduce evidence concerning the character of Dr. McDonald. Specifically, the appellants offered the testimony of women who were former patients of Dr. McDonald but who were not parties to the underlying action. Some of these women chose not to join in the action; others were dismissed from the action because they filed outside the statute of limitation. Two of the women were deposed during discovery and all potential witnesses provided affidavits concerning their alleged encounters with the doctor.

The appellants listed these former patients as trial witnesses. Dr. McDonald objected on the basis that these witnesses should be excluded under Rule 404(b) of the West Virginia Rules of Evidence.[1] The trial court held an *in camera* hearing during the pre-

trial conference and concluded, without the benefit of a record, that these witnesses could not testify to the alleged sexually abusive prior sessions with the doctor. The appellants argued the testimony could be introduced for the purpose of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The trial judge stated that he could not allow the testimony as he considered it to be merely character evidence.[2]

During the course of the trial, counsel for Dr. McDonald called one of the doctor's employees as a witness. This employee testified as to office procedures and other matters. She then proceeded to relate that she had been a patient of the doctor. At the pretrial hearing, the judge assured the appellants' counsel that the testimony of former patients regarding Dr. McDonald's behavior would constitute an opening of the door allowing admissibility of the testimony concerning the doctor's treatment of his former female patients and the alleged sexually abusive contact they had experienced, as this would then be rebuttal evidence. However, as events would prove, this did not happen at trial.

The employee and former patient testified at trial to the circumstances of her examination. Dr. McDonald's counsel then asked her if the doctor had done anything inappropriate to her during her treatment. She stated that he had not.[3] The court denied appellants'

---

1. W.Va.R.Evid. 404(b) states:

   (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

2. We note that the Appellants allege the *in camera* hearing failed to meet the standards set forth in *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). Conversely, Dr. McDonald uses the fact that no record was kept of the hearing, and

he could not, therefore, argue in his defense that no adequate proffer was made of the contested evidence. We need not consider these issues to make a determination on the disposition of this case. While mindful that a *McGinnis* hearing is an *in camera* hearing as defined in Syllabus Point 2 of *McGinnis, supra*, the absence of a record of the proceedings and the questions resulting therefrom leads us to suggest to the trial court that it adhere to the requirements of *McGinnis* upon remand and maintain a record of all substantive *in camera* proceedings.

3. This exchange is abundantly clear in the record:

   Q: "Okay. Did Dr. McDonald, during his treatment of you, do anything that you felt was inappropriate?"
   A: "No."

motion to permit the rebuttal witnesses to be introduced, claiming that the appellee had not "opened the door" to rebuttal evidence, he had only "cracked the door." We disagree.

■ This Court has previously said that " '[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Syl. Pt. 4, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958)." Syllabus Point 1, *Wilkinson v. Bowser,* 199 W.Va. 92, 483 S.E.2d 92 (1996). Moreover, we have noted in a long line of cases going back to the previous century that "[t]he orderly proceedings of a court upon a trial, of necessity, rest very much in the discretion of the presiding judge; and, unless it is made to appear that this discretion has been abused, it is not within the province of the appellate court to interfere with its exercise." *Tully v. Despard,* 31 W.Va. 370, 372, 6 S.E. 927, 928 (1888). Despite our reluctance to overturn the verdict of a jury, in this instance, the conditions necessary for granting a new trial are present.

In *State v. Richards,* 190 W.Va. 299, 438 S.E.2d 331 (1993), this Court noted that West Virginia's Rule 404 is modeled on the corresponding Rule of Federal Evidence, then stated:

> Regarding Federal Rule 404, J.B. Weinstein, *Weinstein's Evidence* § 494[05] (1992), states:
>
> \* \* \*
>
> The prosecution may come forward with evidence rebutting good character only when the accused has called character witnesses to testify to his good character.
>
> In line with this proposition, if the defendant had called a witness or witnesses who testified that he was a peaceful and law-abiding citizen, the prosecution could properly have introduced evidence to show that the defendant had previously been convicted of crimes. Such evidence would, in effect, have rebutted the testimony of

the witnesses that the defendant was a law-abiding citizen.

*Id.* at 302–03, 438 S.E.2d at 334–35.

■ Although the situation hypothesized by Justice Brotherton did not occur in *Richards,* we believe that just such a situation did occur in the case *sub judice.* Consequently, this case was not "fairly tried;" the admission of rebuttal evidence was properly required, due to the eliciting of character evidence from the doctor's witness by Dr. McDonald's counsel. This Court stated in *State v. McGinnis, supra,* that "[i]n reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, . . . maximizing its probative value and minimizing its prejudicial effect." *McGinnis* at 159, 455 S.E.2d at 528. Although the trial judge correctly noted in the trial transcript that the preponderance of testimony at trial was clearly in the appellants' favor, the impact that the testimony of these other women (who had no possibility of fiscal reward) may have had upon the jury cannot be estimated. The unheard testimony may have radically altered the outcome of this case. We, therefore, conclude that by forbidding the introduction of the rebuttal testimony the appellants wished to offer, the trial judge abused his discretion and committed reversible error.

The order denying the appellants' motion for a new trial by the Circuit Court of Kanawha County is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Justice MAYNARD dissents.

Justice McGRAW did not participate in the decision of this case.