425 S.E.2d 202

**Karl S. DIETZ, Petitioner Below, Appellant,**

**v.**

**Carl LEGURSKY, Respondent Below, Appellee.**

**No. 21144.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Dec. 16, 1992.

**528**

Victor A. Barone, Hurt & Barone, Charleston, for appellant.

Mario J. Palumbo, Barry L. Koerber, Office of the Atty. Gen., Charleston, for appellee.

McHUGH, Chief Justice:

In this case, Karl S. Dietz appeals from the ruling of the Circuit Court of Cabell County, which denied him habeas corpus relief. The appellant is presently incarcerated in the state penitentiary at Moundsville. The habeas corpus relief was sought in the circuit court following this Court's affirmance of the appellant's first degree murder conviction. *See State v. Dietz*, 182 W.Va. 544, 390 S.E.2d 15 (1990).

The facts of this case are set forth in the reported opinion, specifically, 182 W.Va. at 548–49, 390 S.E.2d at 19–20.

The appellant raises three issues in this proceeding, two of them the result of new developments in the record, one a reiteration of previous contentions.

## I. APPELLANT'S DECISION TO NOT TESTIFY

As pointed out in the reported opinion, during *voir dire*, the trial judge stated that

---

1. The Fifth Amendment to the *United States Constitution* provides, in part: "No person shall ... be compelled in any criminal case to be a witness against himself[.]"

2. The appellant's motion for a mistrial was made at the conclusion of *voir dire*. Specifically, trial counsel for the appellant requested that the jury which was impaneled during *voir dire* be excused, and a new jury be selected. It was at this point that the trial court's promise was made.

   The State contends that the appellant *was* offered a mistrial at the close of his case, specifically, during arguments over instructions, and that the appellant refused this offer.

---

the appellant, in claiming self-defense, "will state that the decedent did threaten to attack and attacked him in such a way as to require him to defend himself...." Trial counsel for the appellant objected, arguing that the trial judge's statement implied that the appellant would definitely testify, when, of course, he had the right to not testify.[1] Upon objection, the trial judge responded that if the appellant did not testify, then "I will declare a mistrial[.]"

The appellant did not take the stand but the trial court did not declare a mistrial.[2]

In the appeal of his conviction in this case, the appellant raised the issue of the trial court's representation that a mistrial would be declared, contending that reversible error occurred because he relied on the trial court's statement in choosing to not testify on his own behalf.

In rejecting the appellant's contention in that appeal, this Court held:

> There is nothing in the *record* to indicate that the appellant was not called in reliance upon the circuit court's statement during *voir dire*. On this record, it is equally plausible that the appellant was not called as a witness for tactical reasons, for example, to preclude cross-examination of the appellant. In light of this, it would not have been error for the circuit court to fail to grant a mistrial at the conclusion of the appellant's case, if the reason the appellant did not testify was due to tactical reasons. Therefore, there is no error apparent on the record in this case.

182 W.Va. at 556, 390 S.E.2d at 27 (emphasis in original).

However, as pointed out by the appellant, the argument over instructions, to which the State refers, centered on whether a pretrial statement made by the appellant should have been suppressed, and, in the event the case would be tried again, whether the appellant would not accuse the State of withholding exculpatory evidence in exchange for suppression of the statement.

It is not clear from the record what exactly the appellant was offered, but it is clear that he was not offered a mistrial *unconditionally*. In any event, the right to testify upon one's own behalf is fundamental, thus, due process principles are implicated. *See note 4, infra.*

We further pointed out that "gratuitous comments made by a trial court to the effect that it will grant a mistrial are not binding *unless grounds* are shown for a mistrial." 182 W.Va. at 556 n. 10, 390 S.E.2d at 27 n. 10 (emphasis supplied).

In *this* proceeding, the appellant has now developed the record to support his original contention that he relied on the trial judge's statement that a mistrial would be declared if he did not testify.

It is apparent from the record in this habeas corpus proceeding that the appellant relied on the trial judge's promise to declare a mistrial in deciding to not testify. Specifically, the appellant testified that he believed that the trial judge's promise was a "free play," which could be used in the event of the worst possible outcome on his behalf. The appellant testified to the following:

Q. Did you believe the trial judge's statement when he said, 'I will declare a mistrial'?

. . . .

A. I most definitely did.

Q. What part did that statement play, if any, in your decision not to testify at trial?

A. I believed if—I believed that—pretty much that I had a free flag that if there was no—that there was going to be a bad outcome or something of that nature or that I could rely on a mistrial and—

Q. Well,—

A. —I could rely that there would be a mistrial declared if I did not take the witness stand.

Q. Well, explain what you mean by 'free flag.' I mean, you have told me, but explain to the Court.

A. Well, it is like in football when they throw a flag or whatever, it is a free play. They might—they might throw a flag but let the play continue and whatever the outcome it will be favorable to the team that had the flag, especially in offensive play. That is the best way I can describe it. I don't—it was just to the point if you had to bail

out, then there was your outlet. That is the way I perceived it.

Q. What, if anything, did your trial counsel advise you as to the Judge's statement that he was going to declare a mistrial if you didn't testify?

A. I remember the day that the statement was made going out from the courtroom with my attorney. George Stolze, one of my attorneys, had expressed to me that either way that anything went or either way that the trial went he just opened the door to give us a mistrial and that we could rely upon that in the worst of circumstances.

Q. Well, when—during the course of the trial after the State had put on its evidence and then it became the defendant's turn, were you then given counsel by your trial counsel as to whether you should or shouldn't testify?

A. I was given—I was—I talked to George Stolze over the telephone a couple days before I would most likely be called as or have the chance to be called as a witness and he said ultimately it was my decision of whether I wanted to testify or not but he did state emphatically that if I did not testify or I mean—strike that—not if I did not testify, he said that, 'Remember the Judge said he would declare a mistrial, so you always have that option,' something to that effect as close as I can recall.

Q. Was the ultimate decision whether or not to testify then yours based on your advice from your counsel?

A. Yes, that was mine after advise [sic] from my counsel.

Q. And what was the reason that you decided not to testify?

A. The reason I decided not to testify is because I wanted a mistrial of the whole situation. I wanted to get a mistrial. There is—just that situation that I wanted a new trial, and since I was offered that mistrial I would take that—

Q. Well, then—

A. —or that I believed that I was offered.

Furthermore, the appellant's trial counsel testified at the habeas proceeding that

he advised the appellant to not testify because he too relied on the trial judge's representation.[3] Trial counsel's testimony included the following:

Q. What part, if any, did the Judge's statement about the mistrial play in Mr. Dietz not taking the stand?

A. I would say that that was nearly the entire reason for Mr. Dietz not taking the stand. There were, of course, some other minor considerations, as there usually are; but that was the— almost the entire reason.

Q. All right. And did you—what, if anything, did you advise Mr. Dietz as to the effect of and significance of the Judge's statement?

A. I felt that from the beginning the trial started out with built-in error. Prior to—I believe I was the one that moved the trial court to declare a mistrial following the Judge's statements to the jury. Basically, if I recall the statements now was that he indicated to the jury that the defense would be self-defense and, thereby, Mr. Dietz would take the stand and testify in his own defense. I considered that to be an improper comment to make to the jury. For one reason, it locked us into using a particular defense. The second reason being that I believe that locked us into putting Mr. Dietz on the stand, and neither Mr. Raptis nor I had the power to do that. Only Mr. Dietz could put himself on the stand.

. . . .

After the Judge made those comments I moved the Court to declare a mistrial which eventually prompted what I consider to be a promise made that in the event that Mr. Dietz did not testify in his own defense at the trial, that a mistrial would be declared. Because of that— that what I termed a promise being made by the Judge at a point in time when it came time to make that decision whether or not Mr. Dietz would testify it was my advice to him that under the circumstances he should not; however, he was also advised that his right to testify or refuse to testify was a personal constitutional right that only he enjoyed and he was the only person that could really keep himself off of there, but it was advice to him that it would not be to his benefit to testify because of what had happened from the first day.

In *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979), this Court held in syllabus point 3: "A grossly erroneous misstatement by counsel or court about the areas of conduct or criminal record that a defendant can be cross-examined about if he elects to testify in his behalf, which misstatement may be reasonably considered to have deterred him from testifying, is reversible error." [4] We recognize in this case that the alleged "mis-statement" by the trial court did not relate to *areas* in which the appellant could have been cross-examined had he chosen to testify. However, the principle remains the same, namely, that the defendant in a criminal proceeding may not be misled by a statement which may be reasonably considered to have deterred the defendant from testifying.

The record is clear in this case that the appellant relied on the circuit court's representation that a mistrial would be declared if he chose not to testify. Furthermore, the record is clear that the appellant's reliance on this statement may be reasonably considered to have deterred him from testifying on his own behalf.

Accordingly, we hold that because the right of a defendant in a criminal case to testify on his or her own behalf is fundamental, then, in a case where a trial court represents that a mistrial will be declared if the defendant does not so testify, in the event that the defendant does not in fact

---

**3.** Trial counsel for the appellant did not represent the appellant in either appeal before this Court.

**4.** We have recognized that the right of a criminal defendant to testify on his or her behalf is so fundamental that, when surrendered, due process principles are inherently implicated.

Syl. pts. 4–5, *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988).

Relatedly, the failure of a defendant in a criminal case to testify must not allow an inference of guilt to be drawn. In this case, the trial court *did* instruct the jury on this point.

testify and can demonstrate that he or she decided to not testify in reliance on the trial court's representation, it is reversible error for the trial court to not declare a mistrial.

Consequently, the circuit court erred in not granting a mistrial.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The appellant also maintains that he was constitutionally deprived of effective assistance of counsel.

Primarily, the appellant points to trial counsel's failure to place in the record certain medical records which would have been the basis for the expert testimony of Dr. Cyril Wecht. *See State v. Dietz*, 182 W.Va. 544, 553–55, 390 S.E.2d 15, 24–26. We pointed out that the reports on which Wecht would have based his opinion were not included in the record. 182 W.Va. at 554 n. 6, 390 S.E.2d at 24–25 n. 6. The appellant argues that because those reports are now in the record, it is obvious that he was prejudiced by their exclusion because they would have shown the victim's propensity for aggressive behavior, thus, supporting his contention that he acted in self-defense because the victim was the aggressor.

Rule 404(a)(2) of the *West Virginia Rules of Evidence* provides:

**Rule 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes.** (a) *Character Evidence Generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) Character of Victim of a Crime Other than a Sexual Conduct Crime.— Evidence of a pertinent trait of character of the victim of the crime, other than a crime consisting of sexual misconduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

In *State v. Woodson,* 181 W.Va. 325, 329, 382 S.E.2d 519, 523 (1989), we discussed this evidentiary provision:

The text of our Rule 404(a)(2), as well as its federal counterpart, does not use the term 'self-defense,' but refers to the concept of the victim as 'the first aggressor.' The notes of the Advisory Committee on the Federal Rules make it plain that this rule covers several situations, i.e., 'evidence of a violent disposition to prove that the person was the aggressor in an affray' or 'an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of self-defense to a charge of homicide.' This is essentially the same as our preexisting evidentiary rules.

We summarized our discussion in this regard in *Woodson* in that opinion's second syllabus point:

Rule 404(a)(2) of the West Virginia Rules of Evidence essentially codifies the common law rules on the admission of character evidence of the victim of a crime. In particular, under our traditional rule, a defendant in a homicide, malicious wounding, or assault case who relies on self-defense or provocation, may introduce evidence concerning the violent or turbulent character of the victim including prior threats or attacks on the defendant. This is reflected by *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983):

'In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should

be allowed to give evidence thereof.' (Citations omitted).

"Clearly, under Rule 404(a)(2) the accused in a criminal case may initially introduce character evidence to prove that the victim was the first aggressor." Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.2(F)(1)(a) (1986). *See also* 2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* ¶ 404[06] (1992).

■ *W.Va.R.Evid.* 405 provides *methods* of proving character. "Rule 405 provides for three different ways of proving character: (1) by testimony as to reputation, (2) by testimony in the form of an opinion or (3) by evidence of specific instances of conduct. Which method may be used depends on the status of character in the case." Weinstein and Berger, ¶ 405[01] (footnote omitted).

Specifically, Rule 405(a) provides the following: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct." Importantly, "the admission of reputation evidence of the victim's character under Rules 404(a)(2) and 405(a) renders *knowledge of the character by the defendant unnecessary*, since

the evidence is offered merely to permit a jury to circumstantially infer that the victim was the aggressor." Cleckley, § 6.2(F)(1) (1986, 1992 Supp.) (emphasis supplied). *See also* Weinstein and Berger, ¶ 404[06], at 404-41-42 ("Even if the accused was unaware of deceased's reputation, evidence of it may be introduced pursuant to Rule 404(a)(2).").

As noted above, Rule 405 provides *three* methods of proving character: reputation, opinion, and specific acts. In the case now before us, we are only concerned with *opinion* testimony under Rule 405(a), specifically, opinion testimony that the victim may have been the aggressor in her fatal confrontation with the appellant.[5]

It has been pointed out that Rule 405, by providing methods of proving character, "applies not only to testimony by friends, but also to testimony offered by one *competent to form a professional opinion of the character of* the accused or *the victim*, as, for example, a psychiatrist, or a polygraph examiner." Weinstein and Berger, ¶ 405[03] at 405-41 (emphasis supplied).

Counterbalancing the admission of testimony under Rule 405, "as with all testimony, the judge will have to weigh its probative value against the countervailing factors to admissibility specified in Rule 403." Weinstein and Berger, ¶ 405[03], at 405-40.

---

**5.** In our opinion in the original appeal of this case, we went on to discuss Rule 405(b) of the *West Virginia Rules of Evidence*, which relates to evidence of specific acts and provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." We pointed out in that opinion that under Rule 405(b), a defendant who relies on self-defense may offer evidence of specific acts of violence which have been made against him or her "if the defendant has knowledge of specific acts of violence against third parties by the victim[.]" Syl. pt. 3, in part, *Woodson.* We then went on to point out that there is no evidence that the appellant knew the victim prior to the time the homicide occurred. Consequently, under Rule 405(b), the appellant did not know of the victim's aggressiveness that would have caused him to believe that he was in danger.

We recognize that our holding in *Woodson,* specifically, with respect to Rule 405(b), has been questioned. *See* Cleckley, § 6.2(F) (1986,

1992 Supp.). It has been pointed out that a literal construction of Rule 405 would not permit a defendant in a criminal case to show that the victim was the aggressor by using evidence of specific acts because the victim's aggressiveness is not an essential element of self-defense, but merely circumstantial to such a defense. "Nevertheless, ... courts often fail to follow the logic of [this] distinction ... though repeatedly chastised by scholars of evidence for failing to do so—and not infrequently courts have said ... that character is 'in issue' when such is not the case according to the logic [of the distinction] described above." IA Peter Tillers, *Wigmore on Evidence in Trials at Common Law* § 63.1, at 1382–83 n. 1 (1983).

However, we need not revisit the principles relating thereto because the evidence in this case may be admitted under Rule 404(a)(2) and Rule 405(a), under which the appellant is attempting to prove by opinion testimony that the victim may have been the aggressor, in order to support a claim of self-defense.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Accordingly, in a homicide case, malicious wounding, or assault where the defendant relies on self-defense or provocation, under Rule 404(a)(2) and Rule 405(a) of the *West Virginia Rules of Evidence,* character evidence in the form of opinion testimony may be admitted to show that the victim was the aggressor if the probative value of such evidence is not outweighed by the concerns set forth in the balancing test of Rule 403.

■ The appellant has now developed the record to include the report upon which Dr. Wecht would have based part of his testimony. Because the record is now developed to include these pertinent records, this evidence would be admissible upon retrial.

Significantly, trial counsel for the appellant, at the habeas corpus proceeding, admitted that the failure to include these reports was an oversight, and that such reports would have been essential to Dr. Wecht's testimony. These reports contained records which, as argued by the appellant, demonstrate a propensity for violence on the part of the victim. Specifically, the records contained in these reports indicate that the victim had bouts with alcoholism; drug addiction; hostility; erratic behavior, such as attempted suicide with a firearm; fighting with her husband and mental health personnel; and a tendency toward violent behavior when under the influence of drugs.

■ This Court's standard for ineffective assistance of counsel is as follows: "Where a counsel's performance, attacked as ineffective, arises from occurrences in-

volving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. pt. 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

In this case, we believe that the appellant was constitutionally deprived of effective assistance of counsel by trial counsel's failure to vouch the record with the reports at issue. Accordingly, we reverse the circuit court on this point as well.[6]

### III. PROSECUTOR'S CLOSING STATEMENT

■ Finally, the appellant once again raises the issue of the propriety of the assistant prosecutor's remarks in characterizing the appellant during the closing statement of the trial. *See State v. Dietz,* 182 W.Va. 544, 559 n. 15, 390 S.E.2d 15, 29–30 n. 15 (1990).

For example, the assistant prosecutor repeatedly described the appellant as a "liar" and a "killer." The assistant prosecutor also stated that the appellant has a tattoo on his arm, made reference to the fact that the appellant had been adopted by his parents, and gets angry if someone calls him a "bastard," all, as contended by the appellant, to his prejudice.

In contending that the remarks were improper, the appellant does not raise anything new, nor has anything been developed in the record on this point. Rather, this is a reiteration of previous contentions.

Inasmuch as nothing new has been developed on this argument, we decline to engage in a comparative analysis of the statements made in this case against those in cases where we found error. However, we strongly urge the circuit court, upon the retrial of this case, to be advised of our opinion in *State v. Moore,* 186 W.Va. 23, 409 S.E.2d 490 (1990), which was decided

---

6. As for the appellant's other contentions of ineffective assistance of counsel, we do not believe that they rise to such a level that reversible error has occurred. However, most of these other contentions are of the nature that they may be corrected by effective representation during retrial of this case. For example, most of the appellant's remaining contentions in this regard deal with trial counsel's failure to object, or to mount a particular defense.

534

after the trial and original appeal in this case.

In *Moore,* the prosecutor had asserted a personal opinion on the guilt of the defendant. In reversing the defendant's conviction, we pointed out the impropriety of such an assertion by the prosecutor, and we reiterated the principle that the prosecutor occupies a quasi-judicial role.

We again advise the circuit court in this case to not be unmindful of these principles in the retrial of this case.

## IV.  CONCLUSION

Based upon the foregoing, the ruling of the Circuit Court of Cabell County, denying the appellant habeas corpus relief, is reversed, and this case is remanded to that court for proceedings not inconsistent with our opinion herein.

Reversed and remanded.