590 S.E.2d 709

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Brenda Katherine MITCHELL, Defendant Below, Appellant.**

No. 31280.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2003.

Decided Dec. 5, 2003.

Darrell V. McGraw, Jr., Esq., Attorney General, Jon R. Blevins, Esq., Assistant Attorney General, Charleston, for Appellee.

William E. Kiger, Esq., Parkersburg, for Appellant.

PER CURIAM.

This case is before the Court upon the appeal of Brenda Katherine Mitchell. On April 26, 2002, Ms. Mitchell was convicted by a jury in the Circuit Court of Wood County of the felony offenses of unlawful assault and wanton endangerment involving a firearm. On July 8, 2002, she was sentenced concurrently to a term of not less than one year nor more than five years for unlawful assault and to a term of four years for wanton endangerment involving a firearm. This Court has reviewed the petition for appeal, all matters of record, and briefs of the parties. We are of the opinion that reversible error was made with regard to the circuit court's denial of Ms. Mitchell's right to present evidence concerning the victim's general reputation for being a violent person and accordingly, reverse the decision of the circuit court.

## I.

### FACTS

Fifty-one-year-old Brenda Mitchell and forty-year-old Robert Woollard had been living together for more than nine years prior to August 30, 2001. During the evening of August 29, 2001, the two had an argument. After Ms. Mitchell went to bed, Mr. Woollard stayed up most of the night drinking Vodka. The next morning, Ms. Mitchell planned to go to a veterinary clinic where she had previously taken her dog. According to Ms. Mitchell, Mr. Woollard became upset and agitated after he learned of her morning plans. As Mr. Woollard's temperament accelerated, Ms. Mitchell became fearful for her safety given the fact that he had consumed Vodka throughout the entire night.

Ms. Mitchell testified that although she tried to avoid Mr. Woollard that morning, he grabbed her, threw her onto the couch, and began choking her. It was at this point that Ms. Mitchell determined she was finally going to leave Mr. Woollard. Soon afterward,

she noticed that Mr. Woollard had appeared to be passed out on the couch. She proceeded to gather her crutches and four or five small grocery bags packed with clothing and supplies necessary for the attachment and removal of her prosthetic leg.[1] As Ms. Mitchell proceeded outside, she discovered that the air had been let out of the front tires of her vehicle making it impossible for her to leave the residence. Ms. Mitchell then went back inside and called a taxi before going back outside to wait for it to arrive.

Ms. Mitchell later testified that Mr. Woollard came outside, seized her crutches, and said, "[y]ou're not taking these f——ing crutches nowhere. If you want to get around, you can crawl. You're not taking these." Mr. Woollard then took her crutches and her grocery bags and walked toward the residence. Ms. Mitchell claims that it was at this point when she actually told Mr. Woollard that she was leaving him to which he replied "I'll shoot you first" as he entered the home.

As Mr. Woollard came out of the residence again, Ms. Mitchell testified that she feared for her safety and reached into her purse, removed a pistol, and "shot towards his legs to put him down" in order to escape. Mr. Woollard was shot once in the thigh and once in the buttocks. Ms. Mitchell admitted that she intended to shoot Mr. Woollard, but denied trying to kill him. She claims that she "didn't have a choice" as it would have been difficult getting away from him without her crutches.

At trial, Ms Mitchell claimed she acted in self-defense. Ms. Mitchell testified that when she initially began her relationship with Mr. Woollard it was non-abusive, but that it was not long before she became aware of his alcohol and history of abusing other women. She testified that in fact it was Mr. Woollard and his mother who told her of many of his violent acts toward other women.[2] She further conveyed that Mr. Woollard had threatened to kill her and committed various acts of violence upon her throughout their relationship.[3] She described herself as being physically and emotionally trapped as personified by her avowal that Mr. Woollard told her "[t]here's nowhere you can go. You can't hide. You can't get away from me."

As sometimes happens in such trials, Mr. Woollard denied and contradicted much of Ms. Mitchell's testimony. He said he had a high tolerance for alcohol and maintained that he was not intoxicated on the day he was shot despite his night of drinking Vodka and the fact that after he was shot, his blood alcohol content measured .321. Mr. Woollard further denied having an abusive relationship with Ms. Mitchell or with any woman. He admitted that he struck Ms. Mitchell only once during their entire relationship and that was "out of reflex" after she had kicked him. He denied ever choking, making threats to hurt or kill her, or dragging Ms. Mitchell around the house. With regard to police photographs of Ms. Mitchell taken on the day of the shooting showing visible injuries on her arms, Mr. Woollard stated, "She had bruises on her all the time anyway where she run into stuff and slip and .... That one

**1.** Ms. Mitchell is disabled due to a vehicle accident in the early 1980s that resulted in an above-the-knee amputation of her left leg, a broken right leg in four places, and the loss of two of her fingers.

**2.** At trial, Mr. Woollard specifically denied telling Ms. Mitchell of various threatening episodes such as a forewarning that he was going to blow up other women's cars with dynamite he had stolen from work; that he wanted to catch Lisa Smith alone and break both her arms and legs at the joints and make her hurt for a long time; that he put marks on the headboard of a bed after swinging a hatchet at Valerie Barnes; that he beat up Valerie Barnes on two occasions resulting in Barnes visiting the emergency room with a busted lip; and further denied that he told Ms.

Mitchell he would beat Valerie Barnes to death if she ever came to his house because she broke off a relationship with him.

**3.** Ms. Mitchell said Mr. Woollard ridiculed her for being an amputee and that while initially their relationship was fine "the more he drank, the more belligerent he got and the meaner he got." She recalled a time when he threw her over a table, threw the phone against the wall breaking it, and declared "[y]ou're not leaving me. I'll kill you first." She further stated that she was fearful because Mr. Woollard had told her about the other people he had abused and that because of her disability she knew she was an easy target. She also claimed that on another occasion he had dragged her through the house while she did not have her artificial leg attached.

bruise, I think she said the back screen door shut on her arm." Mr. Woollard further denied arguing with Ms. Mitchell the day of the shooting and contradicted testimony that he had taken her crutches while she was waiting for the taxi.[4] Mr. Woollard states that while he did let the air out of Ms. Mitchell's tires, he did so out of concern for her safety as he did not want her to leave and get into an accident. He asserts that Ms. Mitchell was the one "screaming and cussing" the morning of the shooting and further contended that this was consistent with her violent behavior during other times in their relationship.[5]

## II.

### STANDARD OF REVIEW

In Syllabus Point 1 of *State v. Paynter*, 206 W.Va. 521, 526 S.E.2d 43 (1999), we held, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We have further indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

■ We have also explained that we afford great deference to evidentiary rulings made by a trial court. " 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that

such action amounts to an abuse of discretion.' Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), overruled on other grounds, *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994)." Syllabus Point 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999).

## III.

### DISCUSSION

Our principal concern in this appeal is Ms. Mitchell's argument that the circuit court abused its discretion by refusing to allow her to present evidence concerning Mr. Woollard's general reputation for being a quarrelsome and violent individual by finding that her testimony was "strictly limited to what she knew at the time of the alleged offense . . . [and could not] go beyond incidents that were known to Ms. Mitchell at the time of the alleged offense." Ms. Mitchell contends the circuit court's ruling unduly and improperly limited her from making the jury fully aware of Mr. Woollard's history of violence and apparent hostile attitude toward women in general and further notes that such evidence is specifically allowed by West Virginia Rule of Evidence 404(a)(2).[6]

Conversely, the State declares that Ms. Mitchell misunderstands "the profound distinction between reputation and opinion evidence on the one hand and evidence of specific instances of conduct on the other" and further notes that the circuit court did not err in excluding this evidence as it was inadmissible character evidence. The State maintains that the circuit court correctly instructed the jury to disregard testimony of

---

4. Mr. Woollard, however, told Detective Lowe that he and Ms. Mitchell had been arguing prior to the shooting and that he had taken her crutches. He testified to hearing Ms. Mitchell say just *after shooting* "I shot the son of a bitch and I hope he dies," but told Detective Nagle that the only thing he heard was two gunshots.

5. He declared that on a few occasions he had to hold Ms. Mitchell down "when she was getting violent with [him]" and further alleged that it was Ms. Mitchell who had attacked him on various occasions throughout their relationship.

6. Rule 404(a) states in pertinent part:
   (a) Character evidence generally. Evidence of a person's character or a trait of character is

not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:
. . . .
(2) Character of the victim of a Crime Other than a Sexual Conduct Crime. Evidence of a pertinent trait of character of the victim of the crime, other than a crime consisting of sexual misconduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor; . . . .

two of Ms. Mitchell's witnesses concerning events for which Ms. Mitchell did not have specific knowledge at the time of the shooting.

Having reviewed the record in this case, we believe that the issue is governed by the interaction between Rules 404(a)(2) and 405.[7] During trial, Ms. Mitchell's counsel, Mr. White,[8] was precluded from introducing evidence of Mr. Woollard's character or reputation as a dangerous and quarrelsome man. At an April 19, 2002, preliminary hearing, Ms. Mitchell's counsel expressly stated that he wished to introduce *both* evidence of specific acts *and* evidence of Mr. Woollard's reputation to which the assistant prosecutor, Ms. Boylen, indicated that reputation evidence was inadmissible. The following excerpt from that preliminary hearing supports this contention.

> THE COURT: They can't elicit anything else, they can't give a long list of complaints about him.
>
> MR. WHITE: That's clearly inappropriate, your Honor, however, they can testify about his reputation as a dangerous and quarrelsome man, about his reputation that's reputation evidence, not specific acts.
>
> MS. BOYLEN: No, they can't.
>
> MR. WHITE: They can talk about specific acts that my client knew about and they can talk about his reputation in the community as a dangerous and quarrelsome man.
>
> THE COURT: What case is that from?
>
> MR. WHITE: I don't even remember the evidence code, your Honor. That's just general-well, that's in that same case. That's in *State vs. Steele*, citing *State vs. Hardin*, 91 W.Va. 149, 112 S.E. 401, a 1922 case. It is competent for the Defendant to prove the character of-character or reputation of the deceased as a dangerous and

quarrelsome man. That's just reputation evidence, your Honor. That's always admissible.

THE COURT: Okay. Anything else on this issue?

At trial, Mr. White called Dee Toothman and Lisa Smith, both of whom had prior relationships with Mr. Woollard. After their testimony, the circuit court suggested that Mr. White went far beyond the scope as outlined by the April 19, 2002 preliminary hearing. The State then requested a mistrial which was denied by the circuit court. Nonetheless, the circuit court imposed a limiting instruction with regard to witness testimony and directed jurors to only "consider specific acts of violence against third parties by [Mr. Woollard] that [Ms. Mitchell] had knowledge of at the time of the shooting." Mr. White objected to the circuit court's characterization that he had exceeded the scope of examination of Ms. Toothman and Ms. Smith. He further expressed that because of the circuit court's limitation with regard to reputation evidence he was "hamstrung" in his defense of Ms. Mitchell. He further argued to the circuit court that "the jury needs to understand what a dangerous and violent and threatening and abusive man Bob Woollard was, because otherwise, her claim of self defense exists in a vacuum that doesn't give her a fair trial."

The law of self-defense in West Virginia is well settled. "[A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself." *State v. W.J.B.*, 166 W.Va. 602, 606, 276 S.E.2d 550, 553 (1981). It follows that where a defendant relies on self-defense in a homicide, a mali-

---

7. Rule 405 states:
  (a) Reputation or opinion.-In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

  (b) Specific Instances of Conduct. -In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

8. Ms. Mitchell is represented by different counsel in this appeal.

cious wounding, or an assault prosecution, the defendant may introduce evidence concerning violent or turbulent character of the victim, including prior threats or attacks on defendant and to show that the victim was the aggressor. *See State v. Richards,* 190 W.Va. 299, 438 S.E.2d 331 (1993).[9] Moreover,

> It is quite well established that, where self-defense is relied upon to excuse a homicide, and there is evidence tending to establish that defense, it is competent to show the character of the deceased party for violence, and especially is this true when the person charged with the crime has knowledge of such traits of character, for the evidence, not only to some extent characterizes the acts of the deceased, but also has a tendency to show the mental state in which the defendant was at the time to the homicide.

*State v. Hardin,* 91 W.Va. 149, 150, 112 S.E. 401, 402 (1922).

In Syllabus Point 2 of *Dietz v. Legursky,* 188 W.Va. 526, 425 S.E.2d 202 (1992), we said:

> Rule 404(a)(2) of the West Virginia Rules of Evidence essentially codifies the common law rules on the admission of character evidence of the victim of a crime. In particular, under our traditional rule, a defendant in a homicide, malicious wounding, or assault case who relies on self-defense or provocation, may introduce evidence concerning the violent or turbulent character of the victim including prior threats or attacks on the defendant. This

is reflected by *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983): 'In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof.' (Citations omitted). Syl. pt. 2, *State v. Woodson,* 181 W.Va. 325, 382 S.E.2d 519 (1989).

■ In Syllabus Point 3 of *Legursky,* we further explained that although such evidence may be relevant, it must also survive the balancing test set forth in Rule 403.[10]

> In a homicide case, malicious wounding, or assault where the defendant relies on self-defense or provocation, under Rule 404(a)(2) and Rule 405(a) of the West Virginia Rules of Evidence, character evidence in the form of opinion testimony may be admitted to show that the victim was the aggressor if the probative value of such evidence is not outweighed by the concerns set forth in the balancing test of Rule 403.

We also expounded that:

> 82 W.Va. 525, 96 S.E. 938 (1918) ("Where one charged with murder admits the killing and attempts to justify his act upon the ground of self defense, it is proper for him to prove that the deceased was a violent and dangerous man, not only at or about the time of the killing, but that he had been such continuously for many years prior thereto.").

9. The idea that a defendant may introduce evidence concerning the violent or turbulent character of the victim is not a new concept in West Virginia jurisprudence. *See* Syllabus Points 1 & 2, of *State v. Laura,* 93 W.Va. 250, 116 S.E. 251 (1923) (Syllabus Point 1: "In the trial of one accused of homicide, when self defense is relied on, the prior bad conduct of the deceased so closely connected in time and place as to show the state of mind and characterize the conduct of the deceased towards the defendant or his wife, home or place of business, is admissible in evidence for that purpose."; Syllabus Point 2: "And the evidence of previous threats of the deceased against the accused and his property communicated to him and calculated to shed light upon the mental attitude of the deceased towards the prisoner, are admissible in evidence for that purpose."); Syllabus Point 9, *State v. McCausland,*

10. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The text of our Rule 404(a)(2), as well as its federal counterpart, does not use the term 'self-defense,' but refers to the concept of the victim as 'the first aggressor.' The notes of the Advisory Committee on the Federal Rules make it plain that this rule covers several situations, i.e., 'evidence of a violent disposition to prove that the person was the aggressor in an affray' or 'an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of self-defense to a charge of homicide.' This is essentially the same as our preexisting evidentiary rules.

*Legursky*, 188 W.Va. at 531, 425 S.E.2d at 207. We also provided that " '[c]learly, under Rule 404(a)(2) the accused in a criminal case may initially introduce character evidence to prove that the victim was the first aggressor.' Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 6.2(F)(1)(a) (1986). *See also* 2 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence § 404[06] (1992)." *Legursky*, 188 W.Va. at 532, 425 S.E.2d at 208. Additionally, we interpreted Rule 404, wherein this Court stated:

> Importantly, 'the admission of reputation evidence of the victim's character under Rules 404(a)(2) and 405(a) *renders knowledge of the character by the defendant unnecessary,* since the evidence is offered merely to permit a jury to circumstantially infer that the victim was the aggressor.' Cleckley, Sec. 6.2(F)(1) (1986, 1992 Supp.) (Emphasis supplied). See also Weinstein and Berger, ¶ 404[06], at 404–41–42 ('Even if the accused was unaware of deceased's reputation, evidence of it may be introduced pursuant to Rule 404(a)(2).').

*Legursky*, 188 W.Va. at 532, 425 S.E.2d at 208.

■ Considering the facts of this case, the evidence concerning Mr. Woollard's general reputation for being a violent person was relevant and admissible evidence. The testimony of Dee Toothman and Lisa Smith with regard to Mr. Woollard's reputation may have shed light on an issue at the very heart of this case with regard to who was the first aggressor in this altercation. Presentation of such evidence with regard to his reputation during previous relationships may have left the jurors more capable of making a fully educated decision. It was even more important given that Mr. Woollard's testimony was that Ms. Mitchell was the first aggressor on the day of the shooting, as well as during the other altercations between the two prior to the shooting. Given the facts here, the evidence of Mr. Woollard's reputation during other situations where he behaved violently was justified to demonstrate a consistency with how he may have acted on the day that Ms. Mitchell shot him. It was relevant to demonstrate to the jury that his violent conduct was consistent with his past behavior and that Ms. Mitchell therefore had a reasonable apprehension for imminent fear of serious bodily harm or death. We find that the circuit court abused its discretion by refusing to allow Ms. Mitchell and her trial counsel to present evidence concerning Mr. Woollard's general reputation for being a violent person.

Ms. Mitchell raises several additional assignments of error. However, we find none of them merit any extended discussion or constitute reversible error.

■ Initially, we specifically find that there was sufficient evidence to sustain the convictions under the sufficiency of the evidence test contained in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Ms. Mitchell expressly admits that she intentionally shot Mr. Woollard in order to disable him. Under the evidence that was presented to the jury, we believe the jury could rationally have rejected Ms. Mitchell's self-defense claim.[11]

Ms. Mitchell also contends that the trial court made various other improper evidentiary or trial rulings. We note that she undertakes a significant burden in showing error in this regard as:

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such

---

11. Indeed, this is the very reason why we have reversed the circuit court and found that evi- dence of Mr. Woollard's reputation for being a violent person is admissible.

action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds, State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syllabus Point 1, *State v. Calloway,* 207 W.Va. 43, 528 S.E.2d 490 (1999).

■ Ms. Mitchell claims that the trial court allowed stipulations to be admitted to the record although these stipulations were not in writing as required by W.Va. Tr. Ct. R. 42.05. ("Unless otherwise ordered, stipulations must be in writing, signed by the parties making them or their counsel, and promptly filed with the clerk."). The stipulations occurred during the pre-trial hearing on April 19, 2002 in the presence of Ms. Mitchell and Ms. Mitchell was thoroughly questioned by the circuit court about the stipulations. Neither she nor her counsel objected to them. In such circumstances, we find the lack of a writing memorializing the stipulations to be, at best harmless error, or at worst, invited error, given the presence and cooperation of Ms. Mitchell at the pre-trial hearing. *See* Syllabus Point 1, *State v. Redden,* 199 W.Va. 660, 487 S.E.2d 318 (1997) (holding that even though W.Va. R.Crim. P. 23(a) requires a defendant's waiver of a jury trial to be in writing when an on the record review shows a defendant otherwise knowingly, voluntarily and intelligently waives the right, the failure to have the waiver in writing does not invalidate the waiver).

■ Ms. Mitchell claims that the trial court erred in excluding Mr. Woollard's employment records. As discussed earlier, "character evidence in the form of opinion testimony may be admitted to show that the victim was the aggressor if the probative value of such evidence is not outweighed by the concerns set forth in the balancing test of Rule 403." Syllabus Point 2, *Dietz v. Legursky,* 188 W.Va. 526, 425 S.E.2d 202 (1992). Our review of the record convinces us that the circuit court did not abuse its discretion in finding that the employment records were irrelevant because Ms. Mitchell sought introduction of them simply to show that Mr.

Woollard was a bad person and that, in any event, any probative value they might have would be substantially outweighed by their prejudicial effect.[12]

■ Ms. Mitchell further argues that she was prejudiced by the State's cross-examining of her regarding her misuse of prescription drugs. She contends that such information injected "an issue into the trial that was totally irrelevant." We note that under Rule 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, Mr. Woollard testified that the reason that he let the air out of Ms. Mitchell's tires was because he feared that she would take her prescription medications and attempt to drive-threatening herself and others. The introduction of testimony relating to Ms. Mitchell's abuse of prescription drugs was introduced to show that in the past she had "misused those prescription drugs or took too many at some time, [which caused her to] f[a]ll asleep" evidencing the basis for Mr. Woollard's justification for letting the air out of her tires. We think this line of questioning was arguably relevant to give the jury the background regarding why Mr. Woollard behaved as he did on the day he was shot.

■ Ms. Mitchell next claims her trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of brandishing a weapon. However, Ms. Mitchell claims she was entitled to such an instruction based on Syllabus Point 5 of *State v. Bell,* 211 W.Va. 308, 565 S.E.2d 430 (2002) where we held that "[t]he offense of brandishing as defined by West Virginia Code § 61-7-11 is a lesser included offense within the definition of wanton endangerment under West Virginia Code § 61-7-12." However, we decided *Bell* on *May 24, 2002,* while the circuit court held its jury instruction conference in Ms. Mitchell's case on April 25, 2002. We cannot say Ms. Mitchell's trial counsel was ineffective in failing to ask

---

12. Indeed, at trial, the circuit court specifically found that Ms. Mitchell sought introduction of these records for the purpose of demonstrating that Mr. Woollard was "a bad person."

for a lesser included jury instruction especially in light of the fact that the case recognizing the right to such an instruction would not be handed down until a month after the jury instruction conference. Effective assistance of counsel requires a reasonable standard of professional competence; it does not require clairvoyance. *See, e.g., United States v. Gonzalez–Lerma,* 71 F.3d 1537, 1542 (10th Cir.1995) (footnote omitted) ("[C]lairvoyance is not a required attribute of effective representation.").[13]

■ Finally, Ms. Mitchell contends that the circuit court erred in sentencing her to incarceration rather than allowing her "to discharge a sentence via electronically-monitored home incarceration." Nowhere in Ms. Mitchell's brief does she cite or quote the record to show where the circuit court engaged in any conduct that would be remotely indicative of an abuse of discretion by the circuit court. This Court has previously adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *Accord State v. Allen,* 208 W.Va. 144, 162, 539 S.E.2d 87, 105 (1999); *State v. Easton,* 203 W.Va. 631, 642 n. 19, 510 S.E.2d 465, 476 n. 19 (1998); *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995). Ms. Mitchell's argument is not supported with pertinent authority, and is consequently considered to be abandoned.

## IV.

### CONCLUSION

For the reasons stated above, we reverse Ms. Mitchell's conviction and remand for a new trial.

Reversed and remanded.

---

[13.] In light of the fact that we are remanding this case and, inasmuch as we lack the evaluation of the circuit court on whether the facts of the case would justify a lesser included offense instruction, we express no opinion as to whether a brandishing instruction would be justified in the retrial, and leave that issue to the sound judgment of the trial court on remand.